IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

DANIEL J. MITCHELL,

                         Plaintiff,

      v.

JAKE KRUEGER and THOMAS CICHA,

                      Defendants.

OPINION and ORDER

11-cv-279-wmc

_____

Plaintiff Daniel J. Mitchell was granted leave to proceed on his claim that defendants, Wisconsin Correctional Officers Jake Krueger and Thomas Cicha, used excessive force against him in violation of the Eighth Amendment of the United States Constitution. Now before the court is defendants' motion for summary judgment (dkt. #35), as well as Mitchell's motion *in limine* (dkt. #58). For the reasons set forth below, the court will grant the defendants' motion for summary judgment and dismiss this case.

FACTS[1]

Mitchell is presently confined at the Wisconsin Secure Program Facility in Boscobel, Wisconsin. At all times pertinent to the complaint, however, he was incarcerated at the Stanley Correctional Institution ("SCI"), where both defendants were employed by the Wisconsin Department of Corrections.

While monitoring the dayroom on December 8, 2010, Officer Krueger heard Mitchell tell fellow inmate Trent Varney, "I'm here to send a message." Krueger then witnessed Mitchell swinging with closed fists at Varney's head and upper body. When Krueger ordered Mitchell to stop, he did not comply. Krueger repeated his order, directing Mitchell to stop

_____

[1] The facts are drawn from the parties' proposed findings of fact and responses to those findings, and are undisputed unless otherwise noted.

the assault on Varney.  Mitchell not only refused to comply, but said "Fuck that."  After Mitchell refused Krueger's second order to stop fighting, Unit Manager Kenneth Milbeck arrived and gave Mitchell another directive to stop fighting.  Mitchell claims not to have heard Milbeck, although there is no dispute that he did not stop fighting.[2]

At this point, Krueger decided to restrain Mitchell physically, which he did by "controlling Mitchell's descent to the floor" with the assistance of Sergeant Kevin Houle.  Defendants state that it is their policy to control a resistive inmate by "directing" the inmate "to the nearest wall or object in order for the officers to get better control over the inmate so that the inmate will begin to comply with orders."

Mitchell characterizes the attempts to restrain him quite differently: "Defendant Krueger brutally tackled Plaintiff Mitchell into a metal dayroom table, then hitting [an] attached metal seat, rolled off then hit the ground where Plaintiff Mitchell's face was smashed into the floor and Defendant Krueger then landed on top of Plaintiff Mitchell."  Mitchell states further that Krueger twisted his arms behind his back "to the point that when he lifted his head off the ground he could feel his own fingertips [touch] the back of his head," and that "every time [he] tried to lift [his] head off the ground an officer would slam [his] head back down on the ground."

Once Mitchell calmed down,[3] Krueger and others asked him if he was okay.  Mitchell stated, "I'm fine."  Krueger then asked Mitchell if he was going to comply with the officers'

_____

[2]  The parties dispute whether Varney was fighting back.

[3]   Defendants state that Mitchell calmed down after he was taken to the floor.  Mitchell states that he was already calm.

2

directives and Mitchell stated, "yeah man."   At that point, Mitchell was placed in hand restraints.   Sergeant Houle and Officer Krueger, along with Officer Cicha, then assisted Mitchell to his feet and started to lead him to the back of the dayroom.

The parties dispute precisely what happened next.   Defendants Krueger and Cicha maintain that Mitchell "pulled away" in resistance.   Mitchell does not deny struggling, but explains he did so because "Defendant Cicha twisted [my] right wrist causing excruciating pain" and "at that moment [I] yelled AAHH! [a]nd stood on [my] tip toes trying to release some tension and pain."   In response, defendants claim they "directed Mitchell to the table in order to gain compliance." (The court understands this to mean that Mitchell remained standing, but his torso and head were bent over onto the table.)   Mitchell again describes defendants action differently:   "Defendants Krueger and Cicha slammed [me] face first splitting [my] chin open," after which Krueger said, "Did that hurt you little pussy."

Mitchell felt pain and wetness on his chin.   He looked down at the table and saw blood.   Krueger, Cicha and other officers held Mitchell down and put shackles on his legs. Mitchell states that as he was being led to the back of the dayroom, he asked Lieutenant Bradley Hoover for the names of the officers involved in the incident, but that Hoover would not answer and one of the officers "covered up his I.D."   Mitchell was then immediately seen by medical staff and transported by van to the segregation unit.

The parties also differ slightly on the size of the cut on Mitchell's chin: defendants state that the cut was about "1 centimeter long" (or slightly less than 4/10 of an inch) while Mitchell states that it was three-quarters of an inch long (slightly less than 8/10 of an inch) and a quarter-inch deep.   The wound did not require stitches; it was closed using a bonding

agent and bandaged with steri-strips.  Over the next two days, medical personnel observed that Mitchell's chin was "healing nicely." No additional follow up medical care was needed. Mitchell also sustained two superficial scratches to his right wrist. He did not request any treatment for his wrist.  Mitchell states that he has a permanent scar on his chin and has had recurring back pain.

OPINION

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Id.* at 248.

The party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once informed, however, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial'" for any issue identified on which the nonmoving party bears the burden of proof at trial.  *Id.* at 324.  If he fails to do so, "[t]he moving party is 'entitled to a judgment as a matter of law.'"  *Id.* at 323.

Mitchell contends that defendants Krueger and Cicha used excessive force in violation of the Eighth Amendment to the United States Constitution.  Prison conditions that involve

the "unnecessary and wanton infliction of pain" constitute "cruel and unusual punishment" of the sort that is prohibited by the Eighth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Still, not every malevolent touch by a prison guard gives rise to a constitutional violation. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (Friendly, J.) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.")). In that respect, "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9 (quoting *Whitley*, 475 U.S. at 327) (citation and internal quotation marks omitted).

To prevail on his excessive force claim, Mitchell must demonstrate that the defendants used force not "in a good-faith effort to maintain or restore discipline," but instead acted "maliciously and sadistically to cause him harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citations omitted). The following factors are relevant in determining whether an officer's use of force was legitimate or malicious: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7.

Here, the parties agree that Mitchell attacked another inmate and did not comply with prison staff's repeated directives to stop fighting. This created a serious security problem, which defendants had the right to stop through the use of force. Although the

5

parties' characterize the force used during the initial response to Mitchell's non-compliance differently -- defendants state that they "directed" Mitchell to the floor and placed him in hand restraints, while Mitchell states that he was "brutally tackled," his arms severely twisted behind his back and his face "smashed" to the floor -- the conflicting characterizations matter little.  Prison officials have the right to use "good-faith effort[s] to maintain or restore discipline" even when "'it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.'" *Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012) (quoting *Whitley*, 475 U.S. at  319).  Thus, if Mitchell's claim were limited to defendants' initial response, no reasonable jury could conclude that defendants violated the Eighth Amendment.

This leaves the parties' differing recollections of defendants' second, and at least arguably, separate, use of force against Mitchell.  According to defendants, after they placed restraints on Mitchell's hands and brought him to his feet, Mitchell "pulled away" in resistance, leading defendants to "direct" Mitchell to a table. Mitchell maintains that as he was being led to the back of the dayroom, Cicha twisted his wrist for no apparent reason, causing him excruciating pain.  To the extent that Mitchell "pulled away," he explains it was only because Cicha severely twisted his wrist.  He also maintains that there was no reason for defendants to "direct" him to the table with sufficient force to cut open his chin.

After being slammed face first into the table, Mitchell also claims that (1) defendant Krueger asked him, "Did that hurt you little pussy"; and (2) when he asked for the names of the officers involved in the incident, Lieutenant Hoover would not answer and one of the officers "covered up his I.D."  The first claim might permit an inference that the force used

6

was intended to hurt Mitchell; the second that other officers were hoping to avoid being implicated in the use of excessive force.

Even so, an application of the *Hudson*-referenced factors does not "support a reliable inference of wantonness in the infliction of pain" for purposes of establishing an Eighth Amendment violation. *Whitley*, 475 U.S. at 323. Whether or not Mitchell pulled away in response to pressure being applied to his wrist or simply to pull away, the officers could reasonably perceive his resistance as requiring the need for additional force. *Hudson*, 503 U.S. at 7. Indeed, by the time the need for additional force arose, Mitchell had already assaulted another inmate, at least twice refused to obey direct orders by an officer, and necessitated the need for physical force and restraints to coerce Mitchell's compliance. Although Mitchell's hands were restrained at the time, it is undisputed that the inmate who Mitchell assaulted remained in the dayroom while being attended to by other officers with other inmates still milling about. Under these circumstances, the second use of force, however precipitous or unnecessary in the peace of a judge's chambers, appears both reasonably related to and justified by the need to maintain discipline and to assure the safety of others in close proximity. *See Whitley*, 475 U.S. 322-23.

Indeed, in the case of defendant Krueger, there is no evidence that he knew Cicha was wrenching Mitchell's hand (assuming he was for purposes of summary judgment), making his participation in getting Mitchell back under control wholly justified. Even if Krueger intentionally brought Mitchell down harder than necessary (as might arguably be inferred from his disdainful remark immediately afterward), the effort to bend him over the table to restore discipline was not so unreasonable or wanton to implicate the Eighth Amendment.

Similarly, Cicha's action of twisting Mitchell's arm before joining Krueger in getting Mitchell under control, though offensive, caused no injury by itself.

If anything, the officers' decision to direct Mitchell to a nearby table in the dayroom reflects an effort to temper the severity of the force applied. *Hudson*, 503 U.S. at 7. Consistent with this effort, the record shows that the extent of the injury suffered by Mitchell was relatively minor. The nurse who examined him following the use of force observed a "laceration, approximately 1 cm in length, to the underside of his chin." Although Mitchell contends that the cut was approximately twice that size, it is undisputed that he did not need stitches and did not require follow-up care. The slight nature of the injury, while not by itself dispositive of an excessive-force claim, *see Gaddy*, 559 U.S. at 39-40, suggests that the force used was not so significant as to evince the wanton infliction of harm, much less the "knowing willingness that it occur." *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. 312, 321 (1986)); *see also Outlaw v. Newkirk*, 259 F.3d 833, 838 (7th Cir. 2001) ("[U]nder the Eighth Amendment, 'a claim ordinarily cannot be predicated on a *de minimis* use of physical force.'") (quoting *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000)).

In other words, even taking all of the factors in the light most favorable to Mitchell, the record does not support a finding that force was applied maliciously and sadistically for the very purpose of causing harm. Because the record does not disclose a genuine issue of fact requiring a trial, the defendants are entitled to summary judgment on this issue.

ORDER

IT IS ORDERED that:

(1) The motion for summary judgment filed by defendants Jake Krueger and Thomas Cicha (dkt. #35) is GRANTED.

(2) Plaintiff Daniel Mitchell's motion *in limine* (dkt. 58) is MOOT.

(3) The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 30th day of September, 2013.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge

9